Todd M. Friedman (216752)
Law Offices of Todd M. Friedman, P.C.
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: 323-306-4234
tfriedman@toddflaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT TAYLOR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TRIPOINT LENDING LLC; and DOES 1 through 10, inclusive, and each of them,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF UNDER THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ., AND CONNECTICUT LAW**<br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF THE CASE

1. Plaintiff ROBERT TAYLOR ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or

equitable remedies, resulting from the illegal actions of TRIPOINT LENDING, LLC ("Defendant") in negligently, knowingly, and/or willfully contacting Plaintiff and similarly situated consumers on their cellular telephones, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), thereby invading their privacy.

2. Plaintiff brings this action on behalf of himself and a class of similarly situated individuals who received unsolicited telemarketing calls from Defendant despite being listed on the National Do Not Call Registry and/or after requesting that Defendant cease further communications.

3. The TCPA was designed to prevent calls and/or text messages like the ones described herein, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

4. In enacting the TCPA, Congress intended to give consumers a choice as to how corporate similar entities may contact them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. In support of this, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at 12.

5. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Id. at §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

6. Plaintiff further brings this action under Connecticut law, as Plaintiff is a Connecticut resident and Defendant directed "telephonic sales calls" to Plaintiff in Connecticut. Defendant's conduct violates Connecticut's telemarketing statute, Conn. Gen. Stat. § 42-288a, which, as amended, prohibits telemarketers from making telephonic sales calls to consumers without prior express written consent and requires compliance with strict calling, disclosure, and do-not-call obligations. Defendant's violations of § 42-288a constitute per se unfair or deceptive trade practices under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b.

## JURISDICTION & VENUE

7. This Court has federal question jurisdiction over Plaintiff's TCPA

claim because this cause of action arises out of violations of federal law. 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

8. This Court has supplemental jurisdiction over Plaintiff's related state law claim pursuant to 28 U.S.C. § 1367 because that claim arises out of the same nucleus of operative facts as Plaintiff's TCPA claims, namely Defendant's unlawful telemarketing calls directed to Plaintiff.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant TRIPOINT LENDING, LLC resides in this District and is a California limited liability company with its principal place of business located at 2323 Main Street, Irvine, California 92614. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including Defendant's business operations, decision-making, and telemarketing activities emanating from within this District.

## PARTIES

10. Plaintiff, Robert Taylor ("Plaintiff"), is a natural person residing in the state of Connecticut and is a "person" as defined by 47 U.S.C. § 153 (10).

11. Plaintiff is informed and believes, and thereon alleges, that Defendant TRIPOINT LENDING, LLC ("Defendant") is a California limited liability company conducting business in the State of California, including within this District, with its principal place of business located at 2323 Main Street,

Irvine, California. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

12. The above-named Defendants, and its subsidiaries and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

13. Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendant(s), and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendant(s). Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendant(s).

## **FACTUAL ALLEGATIONS**

14. Beginning at least in or around early January 2026, and continuing thereafter, Plaintiff began receiving repeated and unwanted telemarketing calls to

his personal cellular telephone number from Defendant, using a variety of telephone numbers.

15. These calls were made to solicit a loan and to encourage the extension of credit, and therefore constitute "telephonic sales calls," despite Plaintiff having never applied for any loan with Defendant and having no prior relationship with Defendant. These calls are defined under Connecticut law as telephonic sales calls because they were made for the purpose of soliciting an extension of credit and encouraging Plaintiff to engage in a financial transaction.

16. On or about January 5, 2026, Plaintiff expressly requested that Defendant cease further calls and that his telephone number be placed on Defendant's internal Do Not Call list.

17. Despite this request, Defendant continued to place numerous telemarketing calls to Plaintiff thereafter.

18. In total, Plaintiff received at least approximately twelve (12) or more calls from Defendant following his opt-out request, including additional calls in February and March 2026.

19. Calls occurred multiple times per week—ranging from 7 to 15 calls weekly—over a sustained four-month period.

20. The incoming calls came from multiple telephone numbers and area codes, including but not limited to:

- 475-999-0821
- 475-422-8667
- 475-999-0820
- 475-422-8671
- Additional numbers associated with a 949 area code

21. Defendant's use of multiple telephone numbers demonstrates a pattern of call rotation designed to evade call-blocking technology and Do Not Call protections, and to increase the likelihood that Plaintiff would answer the calls.

22. Upon returning at least one of the calls, Plaintiff was connected to a live representative who identified herself as "Jasmine" and confirmed that she was calling on behalf of Defendant.

23. During at least one such communication, Defendant's representative falsely claimed that Plaintiff had previously applied for a loan, which Plaintiff had not done.

24. Plaintiff has never visited Defendant's website, submitted any loan application to Defendant, or otherwise provided any information that would give rise to consent to be contacted by Defendant.

25. Plaintiff is informed and believes that Defendant's statements regarding a purported loan application were false and were made in an effort to

induce Plaintiff to engage with Defendant's services.

26. On multiple occasions, Plaintiff answered Defendant's calls only to experience silence, significant delay, or immediate disconnection, indicating the use of an automatic telephone dialing system, predictive dialer, or similar technology.

27. Defendant never obtained Plaintiff's prior express written consent to place telephonic sales calls to Plaintiff's cellular telephone.

28. Defendant made, or caused to be made, telephonic sales calls to Plaintiff without Plaintiff's prior express written consent, in violation of Conn. Gen. Stat. § 42-288a(l), which provides that "[n]o telemarketer may make, or cause to be made, a telephonic sales call to a consumer without such consumer's prior express written consent."

29. At all relevant times, Plaintiff's telephone number was registered on the National Do Not Call Registry, having been listed since at least November 28, 2017.

30. Defendant nevertheless initiated multiple telemarketing calls to Plaintiff within a twelve-month period, including after Plaintiff's telephone number had been registered on the National Do Not Call Registry for several years.

31. Plaintiff expressly advised Defendant on multiple occasions that he

did not wish to receive further calls and requested that his number be placed on Defendant's internal Do Not Call list. Despite these repeated requests, Defendant continued to place telemarketing calls to Plaintiff, in violation of Conn. Gen. Stat. § 42-288a(g), which requires telemarketers to refrain from making additional telephonic sales calls after such a request.

32. On at least one occasion, Defendant's agent indicated that Plaintiff's number would be removed from Defendant's call list; however, Defendant continued to place calls thereafter, demonstrating a failure to implement or honor internal Do Not Call procedures.

33. The telephone number that Defendant, or its agents, called was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

34. These calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

35. Defendant continued to place unsolicited telemarketing calls to Plaintiff's cellular telephone without consent, including multiple calls in close temporal proximity and using different telephone numbers.

36. Defendant failed to ask Plaintiff at the beginning of such calls whether Plaintiff wished to continue the call, end the call, or be removed from Defendant's call list, in violation of Conn. Gen. Stat. § 42-288a(e).

37. Plaintiff has documented numerous instances of Defendants' unlawful conduct, including:

a. Repeated telemarketing calls placed after Plaintiff's January 5, 2026 opt-out request;

b. Calls originating from multiple telephone numbers and area codes associated with Defendant;

c. Instances in which calls were answered but resulted in silence, delay, or disconnection;

d. Recorded calls in which Defendant's agents made false statements regarding Plaintiff's alleged loan application;

e. Communications with Defendant's representative confirming that the calls originated from Defendant.

38. These calls constitute telephone solicitations as defined under 47 C.F.R. § 64.1200(f)(15), as they were made for the purpose of encouraging the extension of credit and promoting Defendant's loan-related services.

39. Plaintiff received more than one telephone solicitation within a twelve-month period while his telephone number was listed on the National Do Not Call Registry, in violation of 47 C.F.R. § 64.1200(c)(2).

40. Defendant's conduct violated the TCPA by:

a) Failing to establish and implement reasonable practices and procedures to prevent telephone solicitations to persons listed

on the National Do Not Call Registry, as evidenced by Plaintiff receiving repeated telemarketing calls from Defendant despite his number being registered on the National Do Not Call Registry prior to the initiation of those calls, in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c); and

b) Failing to maintain and honor an internal Do Not Call policy, and continuing to place telemarketing calls to Plaintiff's cellular telephone after he expressly requested that the calls stop and that his number be added to Defendant's internal Do Not Call list, in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d).

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated, as a member of the two proposed Classes (hereafter, jointly, "the Classes").

42. Plaintiff represents, and is a member of, the National Do-Not-Call Class (hereinafter "National DNC Class") defined as follows:

All persons within the United States whose telephone numbers were registered on the National Do-Not-Call Registry for at least thirty (30) days, who received more than one telemarketing call by or on behalf of Defendant that promoted Defendant's products or services within any twelve-month period, within four years prior to the filing of this Complaint through the date of class certification.

43. Plaintiff represents, and is a member of, the Internal Do-Not-Call Class (hereinafter "Internal DNC Class") defined as follows:

> All persons within the United States who requested that Defendant stop calling them, and who, after requesting Defendant stop contacting them, received one or more telemarketing calls by or on behalf of Defendant that promoted Defendant's products or services within any twelve-month period, within four years prior to the filing of this Complaint through the date of class certification.

44. Plaintiff further represents, and is a member of, the Connecticut Subclass (hereinafter "Connecticut Subclass") defined as follows:

> All persons who are residents of Connecticut, or whose telephone numbers bear a Connecticut area code, who received one or more telephonic sales calls from Defendant without prior express written consent and/or after requesting that Defendant cease further calls, within four years prior to the filing of this Complaint through the date of class certification.

45. Defendant, its employees, agents, and assigns are excluded from the Classes and Subclass. Plaintiff does not know the number of members in the Classes, but believes the Class members number in the thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

46. This suit seeks only statutory damages and injunctive relief on behalf of the Classes and Subclass. Plaintiff reserves the right to expand the Class definitions or seek additional subclasses as warranted as facts are learned in further investigation and discovery.

47. The joinder of the Classes' members is impractical and the disposition of their claims in the class action will provide substantial benefits both to the parties and to the Court. The Classes and Subclass can be identified through Defendant's records or Defendant's agents' records. The identity of Class members is ascertainable through Defendant's records, including call logs, dialing systems, and internal do-not-call lists.

48. Plaintiff and members of the National DNC Class were harmed by the acts of Defendant in at least the following ways: Defendant illegally contacted Plaintiff and National DNC Class members via their telephones for solicitation purposes, despite such individuals being listed on the National Do-Not-Call Registry, thereby invading their privacy and violating their rights under the Telephone Consumer Protection Act. Plaintiff and the National DNC Class members were damaged thereby.

49. There is a well-defined community of interest in the questions of law and fact involved affecting the National DNC Class members. The questions of

law and fact common to the National DNC Class predominate over questions which may affect individual members, including the following:

a) Whether, within the four years prior to the filing of this Complaint through the date of class certification, Defendant or its agents placed more than one telemarketing call to National DNC Class members whose telephone numbers were listed on the National Do-Not-Call Registry;

b) Whether Defendant maintained and implemented reasonable practices and procedures to prevent calls to numbers listed on the National Do-Not-Call Registry, as required by 47 C.F.R. § 64.1200(c);

c) Whether Defendant obtained prior express written consent before placing telephonic sales calls, as required under applicable law, including Conn. Gen. Stat. § 42-288a(l) for calls directed to Connecticut consumers;

d) Whether Plaintiff and the National DNC Class members were damaged by Defendant's conduct, and the extent of damages for such violations; and

e) Whether Defendant should be enjoined from engaging in such conduct in the future.

50. As a person that received telemarketing calls from Defendant within a twelve-month period, and whose telephone number was registered on the National Do-Not-Call Registry, Plaintiff is asserting claims that are typical of the

National DNC Class. Plaintiff will fairly and adequately represent and protect the interests of the National DNC Class in that Plaintiff has no interests antagonistic to any member of the National DNC Class.

51. Plaintiff and members of the Internal DNC Class were harmed by the acts of Defendant in at least the following ways: Defendant illegally contacted Plaintiff and Internal DNC Class members via their telephones for solicitation purposes after such individuals had requested that Defendant stop contacting them, thereby invading their privacy and violating their rights under the TCPA and applicable state law, including Conn. Gen. Stat. § 42-288a(g). Plaintiff and the Internal DNC Class members were damaged thereby.

52. There is a well-defined community of interest in the questions of law and fact involved affecting the Internal DNC Class members. The questions of law and fact common to the Internal DNC Class predominate over questions which may affect individual members, including the following:

a) Whether, within the four years prior to the filing of this Complaint through the date of class certification, Defendant or its agents placed telemarketing calls to Internal DNC Class members who had previously requested that Defendant stop contacting them;

b) Whether Defendant maintained proper internal do-not-call procedures and policies as required by 47 C.F.R. § 64.1200(d);

c) Whether Defendant failed to honor do-not-call requests, in violation of federal law and applicable state law, including Conn. Gen. Stat. § 42-288a(g);

d) Whether Plaintiff and the Internal DNC Class members were damaged by Defendant's conduct, and the extent of damages for such violations; and

e) Whether Defendant should be enjoined from engaging in such conduct in the future.

53. As a person that received multiple telemarketing calls from Defendant after requesting that Defendant stop contacting him, Plaintiff is asserting claims that are typical of the Internal DNC Class. Plaintiff will fairly and adequately represent and protect the interests of the Internal DNC Class in that Plaintiff has no interests antagonistic to any member of the Internal DNC Class.

54. Plaintiff and members of the Connecticut Subclass were harmed by Defendant's conduct in that Defendant made telephonic sales calls to such individuals without prior express written consent and/or after such individuals requested that Defendant cease further calls, in violation of Conn. Gen. Stat. § 42-288a. Such conduct constitutes unfair or deceptive acts or practices under

Conn. Gen. Stat. § 42-110b. Plaintiff and the Connecticut Subclass members were damaged thereby.

55. There is a well-defined community of interest in the questions of law and fact affecting the Connecticut Subclass. Common questions include, but are not limited to:

a) Whether Defendant made telephonic sales calls to Connecticut consumers without prior express written consent, in violation of Conn. Gen. Stat. § 42-288a(l);

b) Whether Defendant continued to call consumers after requests to stop, in violation of Conn. Gen. Stat. § 42-288a(g);

c) Whether Defendant's conduct constitutes unfair or deceptive trade practices under Conn. Gen. Stat. § 42-110b;

d) Whether members of the Connecticut Subclass are entitled to damages, injunctive relief, and attorneys' fees; and

e) Whether Defendant should be enjoined from engaging in such conduct in the future.

56. Plaintiff's claims are typical of the claims of the Connecticut Subclass, and Plaintiff will fairly and adequately represent and protect the interests of the Connecticut Subclass.

57. Plaintiff and the members of the Classes and Subclass have suffered harm as a result of Defendant's unlawful and wrongful conduct. Absent a class action, the Class members will continue to face the potential for ongoing violations. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual members' claims, few, if any, members of the Classes could afford to seek legal redress for the wrongs complained of herein.

58. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

59. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and applicable state law. The interest of the Class members in individually controlling the prosecution of separate claims against Defendant is small, and management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

60. Defendant has acted on grounds generally applicable to the Classes and Subclass, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Classes and Subclass as a whole.

## FIRST CAUSE OF ACTION
**Negligent Violations of the Telephone Consumer Protection Act**
**47 U.S.C. §227(c)**
(On Behalf of the National DNC and Internal DNC Class)

61. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

62. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(c), and in particular 47 U.S.C. § 227(c)(5), as well as the implementing regulations set forth in 47 C.F.R. § 64.1200(c) and (d).

63. As a result of Defendant's negligent violations of 47 U.S.C. § 227(c), Plaintiff and the National DNC Class and Internal DNC Class members are entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

64. Plaintiff and the National DNC Class and Internal DNC Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
**Knowing and/or Willful Violations of the Telephone Consumer Protection Act**
**47 U.S.C. §227(c)**
(On Behalf of the National DNC Class and Internal DNC Class)

65. Plaintiff incorporates by reference all of the above paragraphs of

this Complaint as though fully stated herein.

66. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(c), and in particular 47 U.S.C. § 227(c)(5).

67. Defendant's conduct was willful and knowing, including but not limited to continuing to place telemarketing calls after Plaintiff's explicit request to stop and after calling telephone numbers listed on the National Do Not Call Registry.

68. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff and the National DNC Class and Internal DNC Class members are entitled to an award of up to $1,500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(C).

69. Plaintiff and the National DNC Class and Internal DNC Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## THIRD CAUSE OF ACTION
**Violation of Connecticut Telemarketing Statute and CUTPA**
**Conn. Gen. Stat. §§ 42-288a and 42-110b**
(On Behalf of the Connecticut Subclass)

70. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

71. Defendant made, or caused to be made, telephonic sales calls to Plaintiff and members of the Connecticut Subclass without prior express written consent, in violation of Conn. Gen. Stat. § 42-288a(l).

72. Defendant further continued to place telephonic sales calls after Plaintiff and members of the Connecticut Subclass requested that Defendant cease further communications, in violation of Conn. Gen. Stat. § 42-288a(g).

73. Defendant also failed to comply with statutory requirements governing telephonic sales calls, including but not limited to failing to honor do-not-call requests and failing to implement lawful telemarketing practices as required by Connecticut law.

74. Pursuant to Conn. Gen. Stat. § 42-288a(k), violations of the telemarketing statute constitute unfair or deceptive acts or practices under Conn. Gen. Stat. § 42-110b.

75. As a result of Defendant's conduct, Plaintiff and the Connecticut Subclass have suffered harm and are entitled to relief under CUTPA, including actual damages, injunctive relief, punitive damages where applicable, and reasonable attorneys' fees and costs pursuant to Conn. Gen. Stat. § 42-110g.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendants for the following:

a. For statutory damages of $500.00 for each negligent violation of the Telephone Consumer Protection Act, pursuant to 47 U.S.C. § 227(c)(5)(B);

b. For statutory damages of up to $1,500.00 for each knowing and/or willful violation of the Telephone Consumer Protection Act, pursuant to 47 U.S.C. § 227(c)(5)(C);

c. For injunctive and equitable relief prohibiting Defendant, and its agents, representatives, and those acting on its behalf, from engaging in unlawful telemarketing practices in violation of the TCPA and applicable state law, including Connecticut law;

d. For actual damages, statutory damages where applicable, and punitive damages pursuant to Conn. Gen. Stat. §§ 42-110g and 42-110o;

e. For reasonable attorneys' fees and costs pursuant to Conn. Gen. Stat. § 42-110g;

f. For costs of suit; and

g. For such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

76. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Respectfully submitted this 30th Day of March, 2026.

By: s/Todd M. Friedman
Todd M. Friedman, Esq.
Law Offices of Todd M. Friedman, P.C.
Attorney for Plaintiff